# MASTER SERVICES AGREEMENT

This Master Services Agreement (the "**Agreement**") shall commence from the date of the last signature below (the "**Effective Date**") and is made by and between Stellar Labs, Inc., a Delaware corporation, having its principal office and place of business in Burlingame, CA 94010, ("**Stellar**"), and Journey Aviation, LLC ("**Customer**"), having its principal office and place of business at 3700 Airport Road #202, Boca Raton, FL 33431. Stellar and Customer may be referred to individually as the "**Party**" and collectively as the "**Parties**."

Stellar provides a cloud-based infrastructure (called Stellar Cloud™) designed to host a suite of legacy and web-based applications for business aviation (collectively, the "**System**"). Stellar is also a reseller of the aviation management software designed and built by FL3XX GmbH (the "**FL3XX Software**"), which is included as a Service (as defined herein) available to Customers. Furthermore, Stellar provides professional services related to implementation, installation, and customization of the System. The Parties have agreed that Stellar will provide parts of the System to Customer, as well as such professional services as the Parties may agree to, now and in the future.

Depending on the Services ordered by a Customer, certain policies and agreements related to such Services may be imposed. These include, without limitation: (a) terms of service; (b) privacy policy; (c) acceptable use policy; and (d) service level agreement. The specific policies and agreements related to any particular Service will be stated in the applicable Order Form (as defined herein) and all such documents will be incorporated by this reference into this Agreement.

Therefore, in consideration for the commitments set forth below, which the adequacy of consideration the Parties hereby acknowledge, the Parties agree as follows:

**1.    DEFINITIONS.**

"**Affiliate**" means any entity that directly or indirectly controls, is controlled by, or is under common control with the subject entity. Control, for purposes hereof, means direct or indirect ownership or control of more than fifty percent (50%) of the voting interests of the subject entity.

"**AUP**" means the applicable Acceptable Use Policy as described in an Order Form.

"**Authorized Contractors**" means independent contractors, licensors, or subcontractors that assist Stellar in the delivery of the Services.

"**Customer Data**" means data in electronic form managed, received, processed, or stored by the System, including without limitation data related to Customer, Users (as defined herein), and Customer's own customers.

"**Deliverables**" means any work product, deliverables, programs, interfaces, modifications, configurations, reports, or documentation developed or delivered in the performance of Professional Services.

"**Documentation**" means the user guides, online help, release notes, training materials, and other documentation provided or made available by Stellar to Customer regarding the use or operation of the Services.

"**Integrated OEM Applications**" means any third-party software that Stellar has integrated with its Subscription Services and are considered part of the System.

"**Order Form**" means an ordering document or online order specifying the Services to be provided hereunder that is entered into between Stellar and Customer, from time to time, including any addenda and supplements thereto.

"**Privacy Policy**" means the applicable privacy policy as described in an Order Form.

"**Professional Services**" means fee-based migration, implementation, training, or consulting services that Stellar performs as described in a SOW, excluding Support Services.

"**Services**" means any instance or combination of Professional Services, Subscription Services, or Support Services that a Customer may purchase or request under an Order Form or SOW.

"**SLA**" means the applicable standard Service Level Agreement as described in an Order Form.

"**Statement of Work**" or "**SOW**" means a statement of work entered into and executed by the Parties describing Professional Services to be provided by Stellar to Customer.

"**Subscription Services**" means the Stellar Cloud™ infrastructure made available by Stellar to Customer, the web-based applications made available by Stellar to Customer (including the FL3XX Software), and/or associated Support Services, as ordered by Customer under an Order Form, as applicable.

"**Support Services**" means the level of support and maintenance services purchased by Customer pursuant to an Order Form.

"**Subscription Term**" means the term of Subscription Services purchased by Customer, which shall commence on the start date specified in the applicable Order Form and continue for the term specified therein and any renewals thereto.

"**Third-Party Applications**" means any non-Stellar products or services made available through the Services (not including Integrated OEM Applications or the FL3XX Software), which are subject to change during the Subscription Term.

"**Third-Party Systems**" means those third-party software and hardware components that are used in concert to make cloud services possible, upon which the System relies and upon which Stellar has no control over, either directly or indirectly.

"**User(s)**" means any individual or company who uses the Services on Customer's behalf or through Customer's account or passwords, whether authorized or not, including, without limitation, Customer's employees, consultants, contractors, agents, or other third parties with which Customer transacts business.

**2.    USE OF THE SYSTEM IN GENERAL.**

2.1   **Use of The System.** During the term of this Agreement (as defined in Section 7.1), Customer may access and use parts of the System pursuant to the terms of any outstanding Order Form, including such features and functions as the Order Form requires.

2.2   **Service Level Remedies.** Stellar shall provide the remedies listed in the Order Form for any failure of the System listed in the SLA as it relates to that particular Order Form. Such remedies are Customer's sole remedy for any failure of the System, and Customer recognizes and agrees that if the Order Form does not list a remedy for a given failure, it has no remedy. Credits issued pursuant to the Order Form apply to outstanding or future invoices only and are forfeited upon termination of this Agreement. Stellar is not required to issue refunds or to make payments against such credits under any circumstances, including without limitation after termination of this Agreement.

2.3   **System Revisions.** Stellar may revise the SLA or the features and functions of the System at any time, provided no such revision materially reduces features or functionality provided pursuant to an Order Form.

2.4   **Usage Limits.** Services may be subject to usage limits specified in applicable Order Forms and Documentation. If Customer exceeds a contractual usage limit, Stellar may work with Customer to seek to reduce Customer's usage so that it conforms to that limit. If, notwithstanding Stellar's efforts, Customer is unable or unwilling to abide by a contractual usage limit, Customer will execute an Order Form for additional quantities of the applicable Services promptly upon Stellar's request, and/or pay any invoice for excess usage in accordance with this Agreement.

2.5   **Audit Rights.** Stellar (including any third-party auditor designated by Stellar) may audit the records and systems of Customer to ensure compliance with the terms of this Agreement and any Order Form. Stellar will notify Customer in writing at least ten (10) business days prior to any such audit. Any such audit will be conducted during regular business hours and will not interfere unreasonably with Customer's business activities. Stellar may audit Customer no more than once in any six (6) month period. If an audit reveals that Customer is using the Services beyond the scope of the subscription granted herein or on any Order Form, then, in addition to any other remedies available to Stellar, Customer will promptly pay Stellar the underpaid fees associated therewith based on Stellar's then-current list rates, as well as any applicable late charges.

**3.    SUBSCRIPTION SERVICES.**

3.1   **Provision of Subscription Services.** Stellar will make the Subscription Services available to Customer pursuant to this Agreement, the Documentation, and the relevant Order Form during the Subscription Term, solely for Customer's internal business purposes. Stellar's Affiliates and its Authorized Contractors may perform certain aspects of the Services, provided that Stellar remains fully liable for same and is responsible for ensuring that any of Stellar's obligations under this Agreement performed by its Affiliates and its Authorized Contractors are carried out in accordance with this Agreement. Customer's use of the Subscription Services includes the right to access all functionality available pursuant to the applicable Order Form.

3.2   **Updates and New Features.** So long as Stellar does not materially degrade the functionality of the Subscription Services during the applicable Subscription Term, Stellar may: (a) modify the System used to provide the Subscription Services to reflect changes in technology, industry practices, and patterns of system use; and (b) update the Documentation accordingly. Subsequent updates, upgrades, enhancements to the Subscription Services made generally available to all subscribing customers will be made available to Customer at no additional charge, but the purchase of Subscription Services is not contingent on the delivery of any future functionality or features. New features, functionality, or enhancements to the Subscription Services may be marketed separately by Stellar and may require the payment of additional fees. Stellar will determine, in its sole discretion, whether access to such new features, functionality, or enhancements will require an additional fee.

3.3   **Integrated OEM Applications**. As part of the Subscription Services, Stellar products may integrate third-party software for which Stellar is responsible to manage and support. These Integrated OEM Applications are integral to the Stellar product itself. For any such Integrated OEM Applications, the following terms and conditions apply: (a) Customer is prohibited from using any Integrated OEM Application in any way other than its integrated use within the Subscription Services; (b)         Customer is prohibited from using any data structures with any Integrated OEM Application other than what is provided in the Subscription Services; (c) Customer has no independent license or other right to any Integrated OEM Application or to use it independently from the Subscription Services; (d) Customer may not sell, rent, sublicense, publish, display, loan, distribute, or lease any Subscription Services containing Integrated OEM Applications; and (e) the original provider of the Integrated OEM Application shall have no liability or responsibility to Customer. Any such liability and responsibility shall fall to Stellar as provided in this Agreement.

3.4   **Third-Party Applications.** As part of the Subscription Services, Stellar may provide access to Third-Party Applications solely as an accommodation to Customer. These Third-Party Applications differ from Integrated OEM Applications or the FL3XX Software in that Customer may choose to use any, all, or none of the offerings at its sole discretion and such applications are not integral to the Services itself. Customer's use of any offering of Third-Party Applications is subject to the applicable provider's terms and conditions and any such terms and conditions associated with such use are solely between Customer and such third-party provider. Stellar does not provide any Support Services for Third-Party Applications products and services.

**4.    PROFESSIONAL SERVICES.**

4.1   **Provision of Professional Services.** Stellar offers a suite of Professional Services, including training and workshops, some of which are described in the Documentation and others are offered on an as-needed basis in consultation with the Customer. For any Professional Services, a SOW will be required, which will include, at a minimum: (a) a description of the Professional Services and any Deliverables to be delivered to Customer; (b) the scope of Professional Services; (c) the schedule for the provision of such Professional Services; and (d) the applicable fees and payment terms for such Professional Services, if not specified elsewhere.

4.2   **Acceptance and Rejection.** Deliverables will be considered accepted ("**Acceptance**"): (a) when Customer provides Stellar written notice of acceptance or (b) ten (10) business days after delivery, if Customer has not first provided Stellar with written notice of rejection. Customer may reject Deliverables only in the event that it materially deviates from its specifications and requirements listed in the applicable SOW and only via written notice setting forth the nature of such deviation. In the event of such rejection, Stellar shall correct the deviation and redeliver the Deliverables within twenty (20) business days. After redelivery pursuant to the previous sentence, the Parties shall again follow the acceptance procedures set forth in this Section. This Section, in conjunction with Customer's right to terminate for material breach where applicable, sets forth Customer's only remedy and Stellar's only liability for failure of Deliverables.

4.3   **Incorporation of Deliverables.** Upon Acceptance, each Deliverable will constitute an element of the System and will thereafter be subject to this Agreement's terms regarding the System, including without limitation license and indemnity terms. Stellar retains ownership of all Deliverables, and Customer receives no right, title, or interest in or to Deliverables except as specifically set forth in this Agreement or the applicable SOW. For clarification,

Deliverables does not include the Customer Data, which is treated separately in this Agreement.

4.4 **Change Orders.** Changes to Deliverables will require and shall become effective only when fully documented in a written change order (each a "**Change Order**") signed by duly authorized representatives of the Parties prior to implementation of the changes. Such changes may include, for example, changes to the scope of work and any corresponding changes to the estimated fees and schedule. Change Orders shall be deemed part of, and subject to, this Agreement.

**5. FEES AND PAYMENT.**

5.1 **Fees and Reimbursement.** Customer shall: (a) pay Stellar the fee set forth in each Order Form (the "**Subscription Fees**") for each Subscription Term, as well as such fees as are set forth in each SOW ("**Professional Service Fees**"); and (b) reimburse such expenses as Stellar reasonably incurs in provision of Professional Services. Amounts listed in SOW's are estimates of Professional Services fees and will not be binding, except to the extent that the SOW specifically provides to the contrary. Stellar will not be required to refund Subscription Fees or Professional Service Fees under any circumstances.

5.2 **Payments.** Fees are payable in United States Dollar (US$). Except as otherwise stated in the applicable Order Form or SOW, Customer agrees to pay all invoiced amounts within thirty (30) days of invoice date.

5.3 **Suspension.** If Customer fails to pay any amounts due under this Agreement by the due date, in addition to any other rights or remedies it may have under this Agreement or by matter of law: (a) Stellar reserves the right to suspend the Subscription Services upon thirty (30) days' notice, until such amounts are paid in full; and (b) Stellar reserves the right to immediately suspend any ongoing Professional Services.

5.4 **Overdue Charges.** Stellar will have the right to charge interest at a rate equal to the lesser of one and one-half percent (1.5%) per month or the maximum rate permitted by applicable law until Customer pays all amounts due; provided that Stellar will not exercise its right to charge interest if the applicable charges are under reasonable and good faith dispute and Customer is cooperating diligently to resolve the issues giving rise to the overdue charges.

5.5 **Taxes.** Fees for Services exclude all sales, value-added, and other taxes and duties imposed with respect to the sale, delivery, or use of any Services covered hereby. Unless Customer provides a valid, signed certificate or letter of exemption for each respective jurisdiction of its tax-exempt status, Customer is responsible for payment of all taxes, levies, duties, assessments, including but not limited to value-added, sales, use, or withholding taxes, assessed or collected by any governmental body (collectively, "**Taxes**") arising from Stellar's provision of the Services hereunder, except any taxes assessed on Stellar's net income. If Stellar is required to directly pay or collect Taxes related to Customer's use or receipt of the Services hereunder, Customer agrees to promptly reimburse Stellar for any amounts paid by Stellar.

**6. SECURITY AND DATA PRIVACY.**

6.1 **Security and Internal Controls.** Stellar takes the protection and integrity of the System and Customer Data seriously and maintains a security framework of policies, procedures, and controls that includes administrative, physical, and technical safeguards. This framework is encapsulated in Stellar's Security Annex, which is available upon request.

6.2 **Data Privacy.** In performing the Services, Stellar will comply with the applicable privacy policy. Stellar shall process personal data on behalf of and in accordance with Customer's instructions consistent with this Agreement and as necessary to provide the Services.

**7. TERM AND TERMINATION.**

7.1 **Term of Agreement.** This Agreement commences on the Effective Date and continues until all Services ordered via Order Forms have expired or have been terminated.

7.2 **Termination for Cause.** Either Party may terminate this Agreement for the other's material breach by written notice specifying in detail the nature of the breach, effective in thirty (30) days unless the other Party first cures such breach, or effective immediately if the breach is not subject to cure. Without limiting Stellar's other rights and remedies, Stellar may suspend or terminate a Customer's or User's access to the System at any time, without notice, if Stellar reasonably concludes such Customer or User has conducted itself in a way that is not consistent with the requirements of the applicable AUP, or any other applicable policy or requirements of this Agreement, or in a way that subjects Stellar to potential liability.

7.3 **Refund or Payment Upon Termination.** Upon termination for cause of an Order Form or SOW by Customer and upon Customer's written request, Stellar shall refund, on a pro rata basis, any fees paid thereunder that cover the remainder of the applicable Subscription Term after the effective date of termination. Upon termination for cause of an Order Form or SOW by Stellar, all amounts owed by Customer thereunder shall become due and payable. In no event shall any termination relieve Customer of the obligation to pay all fees payable to Stellar for the period prior to the effective date of termination.

7.4 **Data Portability and Deletion.** Upon request by Customer made within thirty (30) days after the effective date of termination or expiration of this Agreement, Stellar will make Customer Data available to Customer for export or download as provided in the Documentation. After such 30-day period, Stellar will have no obligation to maintain or provide any Customer Data, and as provided in the Documentation may thereafter delete or destroy all copies of Customer Data in its systems or otherwise in its possession or control, unless legally prohibited.

7.5 **Effect of Termination.** Upon termination or expiration of this Agreement, Customer relinquishes all rights granted to Customer under this Agreement. Any data belonging exclusively to the Customer will be deleted or returned to Customer upon termination or expiration in a mutually agreed form. The following provisions will survive termination or expiration of this Agreement: (a) any obligation of Customer to pay fees incurred before termination; (b) Articles and Sections 9 (Proprietary Rights and Feedback), 10 (Confidential Information), 11.4 (Warranty Disclaimers), 12 (Indemnification), and 13 (Limitation of Liability); and (c) any other provision of this Agreement that must survive to fulfill its essential purpose.

**8. CUSTOMER RESPONSIBILITIES.**

8.1 **Acceptable Use.** Customer shall comply with the applicable AUP and the System provisions stated in Article 2.

8.2 **Customer Data.** Customer is responsible for its legal and regulatory compliance in its use of any Services and shall make Stellar aware of any Customer Data processed, stored or transmitted through the Services for which regulations apply. If, in the course of providing Services, Stellar agrees in writing to process such Customer Data and Customer has subscribed to any applicable Services, Stellar shall process it only as permitted under this Agreement and in compliance with data protection legislation to which Stellar is subject as a service provider.

8.3 **Unauthorized Access.** Customer shall take reasonable steps to prevent unauthorized access to the System, including without limitation by protecting its passwords and other log-in information. Customer shall notify Stellar immediately of any known or suspected unauthorized use of the System or breach of its security and shall use best efforts to stop said breach.

8.4 **Compliance with Laws.** In its use of the System, Customer shall comply with all applicable laws, including without limitation laws governing the protection of personally identifiable information and other laws applicable to the protection of Customer Data.

8.5 **User System Access.** Customer is responsible and liable for: (a) all Users (as defined in Article 1) of the System, including without limitation unauthorized User conduct and any User conduct that would violate the applicable AUP or the requirements of this Agreement applicable to Customer; and (b) any use of the System through Customer's account, whether authorized or unauthorized.

9. **PROPRIETARY RIGHTS AND FEEDBACK.**

9.1 **IP Rights in the System.** Stellar retains all right, title, and interest in and to the System, including without limitation all software used to provide the System and all graphics, user interfaces, logos, and trademarks reproduced through the System. This Agreement does not grant Customer any intellectual property license or rights in or to the System or any of its components. Customer recognizes that the System and its components are protected by copyright and other laws.

9.2 **Customer Data.** As between Customer and Stellar, Customer is and will remain the sole and exclusive owner of all right, title, and interest to all Customer Data, including any intellectual property rights therein. Customer hereby grants Stellar, its Affiliates, and applicable Authorized Contractors all necessary rights to host, use, process, store, display, and transmit Customer Data solely as necessary for Stellar to provide the Services in accordance with this Agreement. Subject to the limited licenses granted herein, Stellar acquires no right, title, or interest from Customer in or to Customer Data, including any intellectual property rights therein.

9.3 **Feedback.** Stellar has not agreed to and does not agree to treat as confidential any Feedback ("**Feedback**" refers to any suggestion or idea for improving or otherwise modifying any of Stellar's Services) that Customer or other Users provide to Stellar, and nothing in this Agreement or in the Parties' dealings arising out of or related to this Agreement will restrict Stellar's right to use, profit from, disclose, publish, keep secret, or otherwise exploit Feedback, without compensating or crediting Customer or the other User in question. Customer hereby grants Stellar a perpetual, irrevocable right and license to exploit Feedback in any and every way. Notwithstanding any contrary provision of Article 10 (Confidential Information), Feedback will not constitute Customer's Confidential Information.

10. **CONFIDENTIAL INFORMATION.**

10.1 **"Confidential Information"** means all confidential or proprietary information of a party ("**Disclosing Party**") disclosed to the other party ("**Receiving Party**"), whether orally or in writing, that is designated as confidential or reasonably should be understood to be confidential given the nature of information and the circumstances of disclosure. Without limiting the coverage of these confidentiality obligations, the Parties acknowledge and agree that Confidential Information of each Party shall include the terms and conditions of this Agreement (including pricing and other terms set forth in all Order Forms and/or SOWs hereunder), related benchmark or similar test results, other technology and technical information, security information, security audit reports, and business and marketing plans, except that Stellar may reference and use Customer's name, logos, and the nature of the Services provided hereunder in Stellar's business development and marketing efforts.

10.2 **Exclusions.** Notwithstanding the foregoing, Confidential Information does not include information that: (a) is in Receiving Party's possession at the time of disclosure; (b) is independently developed by Receiving Party without use of or reference to Confidential Information; (c) becomes known publicly, before or after disclosure, other than as a result of Receiving Party's improper action or inaction; or (d) is approved for release in writing by the other Party.

10.3 **Nondisclosure.** The Receiving Party shall use the same degree of care used to protect the confidentiality of its own Confidential Information of like kind (but in no event less than reasonable care), and, except with Disclosing Party's written consent, shall: (a) not use any Confidential Information of Disclosing Party for any purpose outside the scope of this Agreement; and (b) limit access to Confidential Information of Disclosing Party to those of its and its Affiliates' employees, contractors and agents who need such access for purposes consistent with this Agreement and who have a duty or obligation of confidentiality no less stringent than that set forth herein.

10.4 **Compelled Disclosure.** The Receiving Party may disclose Confidential Information of the Disclosing Party to the extent required by applicable law, regulation or legal process, provided that the Receiving Party: (a) provides prompt written notice to the extent legally permitted; (b) provides reasonable assistance, at Disclosing Party's cost, in the event the Disclosing Party wishes to oppose the disclosure; and (c) limits disclosure to that required by law, regulation or legal process.

10.5 **Injunction.** Customer agrees that breach of this Article 10 would cause Stellar irreparable injury, for which monetary damages would not provide adequate compensation, and that in addition to any other remedy, Stellar will be entitled to injunctive relief against such breach or threatened breach, without proving actual damage or posting a bond or other security.

10.6 **Retention of Rights.** This Agreement does not transfer ownership of Confidential Information or grant a license thereto. Each Party will retain all right, title, and interest in and to its Confidential Information.

11. **REPRESENTATIONS, WARRANTIES, AND DISCLAIMERS.**

11.1 **Representations and Warranties from Stellar.** Stellar represents and warrants that: (a) Stellar has the legal authority to enter into this Agreement; (b) it is the owner of the System and of each and every component thereof, or the recipient of a valid license thereto, and that it has and will maintain the full power and authority to grant the rights granted in this Agreement without the further consent of any third party; (c) the System and Subscription Services will materially conform with the relevant Documentation; (d) the functionality and security of the Subscription Services will not be materially decreased during a Subscription Term; and (e) Professional Services will be performed in a competent and workmanlike manner consistent with generally accepted industry standards.

11.2 **Remedies.** For any failure of any Services, as applicable, to conform to their respective warranties, Stellar's liability and Customer's sole and exclusive remedy shall be for Stellar to use commercially reasonable efforts to correct such failure; or, in the case of a breach of the warranty for Professional Services to re-perform the affected Professional Services. If the foregoing remedies are not commercially practicable, Stellar may, in its sole discretion, terminate the applicable Order Form or SOW upon providing Customer with written notice thereof, and, as Customer's sole and exclusive remedy, refund to

Customer (a) in the case of breach of the warranty of Subscription Services, any Subscription Fees paid by Customer with respect to the unexpired portion of the current Subscription Term for the non-conforming Subscription Services; or (b) in the case of breach of the warranty for Professional Services, any fees paid by Customer for the portion of Professional Services giving rise to the breach.

11.3 **Representations and Warranties from Customer.** Customer represents and warrants that (a) it has the legal authority to enter into this Agreement, and (b) it will use the Services in accordance with the terms and conditions set forth in this Agreement (including the policies set forth in each Order Form) and in compliance with all applicable laws, rules and regulations.

11.4 **Warranty Disclaimers.** Except as expressly provided herein, CUSTOMER ACCEPTS THE SYSTEM "AS IS" AND AS AVAILABLE. And except as set forth above in this Article 11, STELLAR PROVIDES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, OR ANY IMPLIED WARRANTY ARISING FROM STATUTE, COURSE OF DEALING, COURSE OF PERFORMANCE, OR USAGE OF TRADE. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING: (a) STELLAR DOES NOT REPRESENT OR WARRANT THAT THE SYSTEM WILL PERFORM WITHOUT INTERRUPTION OR ERROR; AND (b) STELLAR DOES NOT REPRESENT OR WARRANT THAT THE SYSTEM IS SECURE FROM HACKING OR OTHER UNAUTHORIZED INTRUSION OR THAT CUSTOMER DATA WILL REMAIN PRIVATE OR SECURE.

**12. INDEMNIFICATION.**

12.1 **From Stellar.** Stellar shall defend and indemnify Customer and Customer's Associates (as defined below in Section 12.3) against any "**Indemnified Claim**", meaning any third-party claim, suit, or proceeding arising out of, related to, or alleging direct infringement of any patent, copyright, trade secret, or other intellectual property right by the System. Stellar's obligations set forth in this Section do not apply to the extent that an Indemnified Claim arises out of: (a) Customer's breach of this Agreement; (b) revisions to System components made without Stellar's written consent; (c) Customer's failure to incorporate System updates or upgrades that would have avoided the alleged infringement, provided Stellar offered such updates or upgrades without charges not otherwise required pursuant to this Agreement; (d) Stellar's modification of the System in compliance with specifications provided by Customer, including without limitation Deliverables to the extent created based on such specifications; (e) any Deliverable, if the SOW or a disclosure provided at or before delivery states that such Deliverable incorporates third-party software or other assets; or (f) use of the System in combination with hardware or software not provided by Stellar. In the event of an Indemnified Claim, Stellar may in Stellar's sole discretion and at no cost to Customer: (a) modify the Subscription Services so that they no longer infringe or misappropriate, without breaching Stellar's warranties hereunder; (b) obtain a license for Customer's continued use of Subscription Services in accordance with this Agreement; or (c) terminate Customer's subscriptions for such Subscription Services and refund to Customer any prepaid fees covering the remainder of the Subscription Term after the effective date of termination.

12.2 **From Customer.** Customer shall defend and indemnify Stellar and Stellar's Associates (as defined below in Section 12.3) against any "**Indemnified Claim**", meaning any third-party claim, suit, or proceeding arising out of or related to Customer's alleged or actual use of, misuse of, or failure to use the System, including without limitation: (a) claims by Customer's employees or Users; (b) claims related to unauthorized disclosure or exposure of personally identifiable information or other private information, including Customer Data; (c) claims related to infringement or violation of a copyright, trademark, trade secret, or privacy or confidentiality right by written material, images, logos or other content uploaded to the System through Customer's account, including without limitation by Customer Data; (d) claims that use of the System through Customer's account, including by Customer's employees or Users, harasses, defames, or defrauds a third party or violates the CAN-Spam Act of 2003 or any other law or restriction on electronic advertising; (e) infringement claims arising out of or related to the conditions listed in Subsections 12.1(a) through 12.1(f) above, and (f) claims related to the injury to or death of any individual, or any loss of or damage to real or tangible personal property, caused by the act or omission of Customer or of any of its agents, subcontractors, or employees. Indemnified Claims listed above in this Section include, without limitation, claims arising out of or related to Stellar's negligence, but they exclude any claim that would constitute an Indemnified Claim pursuant to Section 12.1 above.

12.3 **Litigation and Additional Terms.** The obligations of the indemnifying Party ("**Indemnitor**") pursuant to Section 12.1 or 12.2 above: (a) include retention and payment of attorneys and payment of court costs, as well as settlement at Indemnitor's expense and payment of judgments; and (b) will be excused to the extent that the other contracting Party's ("**Indemnified Party's**") or any of such Indemnified Party's Associates' failure to provide prompt notice of the Indemnified Claim or reasonably to cooperate, which materially prejudices the defense. Indemnitor will control the defense of any Indemnified Claim, including appeals, negotiations, and any settlement or compromise thereof; provided Indemnified Party will have the right, not to be exercised unreasonably, to reject any settlement or compromise that requires that it admit wrongdoing or liability or subjects it to any ongoing affirmative obligations. (A Party's "**Associates**" are its officers, directors, shareholders, parents, subsidiaries, agents, successors, and assigns.)

**13. LIMITATION OF LIABILITY.**

13.1 **Dollar Cap.** STELLAR'S LIABILITY FOR ALL CLAIMS ARISING OUT OF OR RELATED TO THIS AGREEMENT WILL NOT EXCEED THE AMOUNT PAID OR PAYABLE BY CUSTOMER FOR THOSE SERVICES GIVING RISE TO SUCH CLAIM UNDER THE APPLICABLE ORDER FORM AND/OR SOW IN THE TWELVE (12) MONTHS PRECEDING THE APPLICABLE INCIDENT.

13.2 **Exclusion of Consequential and Related Damages.** IN NO EVENT WILL STELLAR BE LIABLE TO CUSTOMER FOR ANY CONSEQUENTIAL, INDIRECT, SPECIAL, INCIDENTAL, OR PUNITIVE DAMAGES ARISING OUT OF OR RELATED TO THIS AGREEMENT.

13.3 **Clarifications and Disclaimers.** THE LIABILITIES LIMITED BY THIS ARTICLE APPLY: (a) TO LIABILITY FOR NEGLIGENCE; (b) REGARDLESS OF THE FORM OF ACTION, WHETHER IN CONTRACT, TORT, STRICT PRODUCT LIABILITY, OR OTHERWISE; (c) EVEN IF STELLAR IS ADVISED IN ADVANCE OF THE POSSIBILITY OF THE DAMAGES IN QUESTION AND EVEN IF SUCH DAMAGES WERE FORESEEABLE; and (iv) EVEN IF CUSTOMER'S REMEDIES FAIL OF THEIR ESSENTIAL PURPOSE. If applicable law limits the application of the provisions of this Article, Stellar's liability will be limited to the maximum extent permissible. For the avoidance of doubt, Stellar's liability limits and other rights set forth in this Article apply likewise to Stellar's Affiliates, Authorized Contractors, licensors, suppliers, advertisers, agents, sponsors, directors, officers, employees, consultants, and other representatives.

**14. INSURANCE.**

14.1 **Limits.** During the term of this Agreement, Stellar shall maintain in full force and effect: (a) commercial general liability insurance covering personal injury and property damage, including without limitation contractual liability, with limits of at least one million dollars ($1,000,000) per occurrence and two million dollars ($2,000,000) in the aggregate; (b) business automobile liability insurance for all vehicles, including those owned or rented by Stellar or its employees, covering personal injury and property damage, with a limit of at least one million dollars ($1,000,000) per occurrence; (c) worker's compensation and employer's liability insurance, with limits of at least one million dollars ($1,000,000); and (d) cyber liability insurance, with a limit of at least two million dollars ($2,000,000) per occurrence.

14.2  **Primary Carrier and Additional Insured.** Stellar shall maintain all such insurance with carriers rated A or better by AM Best. The insurance policies required pursuant to this Article 14 will stipulate that they are primary insurance and that no insurance policy or self-insurance program of Customer will be called upon to contribute. At Customer's request, Stellar shall provide Customer with certificates of insurance evidencing the above coverages. Additionally, upon Customer's request, Stellar will name the Customer as additional insured (where appropriate) and entitled to thirty (30) days' written notice following any cancellation, reduction, or change in coverage.

**15.  GENERAL PROVISIONS.**

15.1  **Notices.** Both Parties agree that any notices required to be given under this Agreement by the other Party will be deemed to have been given if delivered in accordance with the contact information provided by the Parties. It is the responsibility of the Parties to provide the other Party with up-to-date contact information, which shall be provided in writing.

15.2  **No Partnership; Independent Contractors.** No partnership, joint venture, employment, or agency relationship exists between Customer and Stellar as a result of this Agreement or Customer's use of the System. The Parties are independent contractors and shall so represent themselves in all regards. Neither Party is the agent of the other, and neither may make commitments on the other's behalf.

15.3  **Force Majeure.** No delay, failure, or default, other than a failure to pay fees when due, will constitute a breach of this Agreement to the extent caused by acts of war, terrorism, hurricanes, earthquakes, other acts of God or of nature, strikes or other labor disputes, riots or other acts of civil disorder, embargoes, or other causes beyond the performing Party's reasonable control.

15.4  **Assignment and Successors.** Customer may not assign this Agreement or any of its rights or obligations hereunder without Stellar's express written consent. Stellar may assign this Agreement without consent to (a) an acquirer of all or substantially all of the assets or equity of Stellar, or (b) a successor by merger. Except to the extent forbidden in this Section 15.4, this Agreement will be binding upon and inure to the benefit of the parties' respective successors and permitted assigns.

15.5  **Severability.** To the extent permitted by applicable law, the Parties hereby waive any provision of law that would render any clause of this Agreement invalid or otherwise unenforceable in any respect. In the event that a provision of this Agreement is held to be invalid or otherwise unenforceable, such provision will be interpreted to fulfill its intended purpose to the maximum extent permitted by applicable law, and the remaining provisions of this Agreement will continue in full force and effect.

15.6  **No Waiver.** Neither Party will be deemed to have waived any of its rights under this Agreement by lapse of time or by any statement or representation other than by an authorized representative in an explicit written waiver. No waiver of a breach of this Agreement will constitute a waiver of any other breach of this Agreement.

15.7  **Choice of Law and Jurisdiction.** This Agreement will be governed solely by the internal laws of the State of California including, without limitation, applicable federal law, without reference to: (a) any conflicts of law principle that would apply the substantive laws of another jurisdiction to the Parties' rights or duties; (b) the 1980 United Nations Convention on Contracts for the International Sale of Goods; or (c) other international laws. The Parties consent to the personal and exclusive jurisdiction of the federal and state courts of San Mateo County, California. This Section 15.7 governs all claims arising out of or related to this Agreement, including without limitation tort claims.

15.8  **Third-Party Systems.** Third-Party Systems may evolve with upgrades and security patches over time. Stellar cannot be held liable for any failures as a result of unknown third-party changes or failures. Any upgrades required to be compatible with Third-Party Systems that become necessary after the signing of this Agreement may be considered to be outside of the contemplated scope and may require a separate Order Form, which may incur additional fees.

15.9  **Conflicts.** Within this Agreement (including all applicable Order Forms and SOW's), the following order of precedence shall apply (from highest to lowest): (a) This main body of this Agreement; (b) Any attachment, addendum, or exhibit to this Agreement (excluding Order Forms and SOW's); and (c) Order Forms or SOW's, with more recent documents taking precedence over older ones. No Order Form, SOW, or other attachment incorporated into this Agreement after execution of this main body will be construed to amend this main body or any earlier attachment unless it specifically states its intent to do so.

15.10 **Construction.** The Parties agree that the terms of this Agreement result from negotiations between them. This Agreement will not be construed in favor of or against either party by reason of authorship.

15.11 **Technology Export.** Customer agrees that the System will not be shipped, transferred or exported into any country or used in any manner prohibited by the United States Export Administration Act or any other export laws, restrictions or regulations.

15.12 **Entire Agreement.** This Agreement sets forth the entire agreement of the Parties and supersedes all prior or contemporaneous writings, negotiations, and discussions with respect to its subject matter. Neither Party has relied upon any such prior or contemporaneous communications.

15.13 **Execution in Counterparts.** This Agreement may be executed in one or more counterparts. Each counterpart will be an original, but all such counterparts will constitute a single instrument.

15.14 **Amendment.** This Agreement may not be amended except through a written agreement by authorized representatives of each Party. Notwithstanding the foregoing provisions of this Section, with thirty (30) days' notice, Stellar may revise its various policies in accordance with the change provision contained within each.

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be executed in duplicate originals by their duly authorized representatives.

| for **Journey Aviation, LLC** | | for **Stellar Labs, Inc.** | |
|---|---|---|---|
| Signature: | *Fabian Bello* (DocuSigned by: E8327F5DD3C8408...) | Signature: | *Vicki Nakata* (DocuSigned by: AEA285F609A640E...) |
| Name: | Fabian Bello | Name: | Vicki Nakata |
| Title: | CEO | Title: | CEO |
| Date: | 21 August 2020 | Date: | 21 August 2020 |