Peter Vestal (SBN 159440)
pvestal@nvlawllp.com
John Kelley (SBN 194073)
jkelley@nvlawllp.com
NIESAR & VESTAL LLP
90 New Montgomery St. 9th Floor
San Francisco, CA 94105
Telephone:  (415) 882-5300
Facsimile:   (415) 882-5400

Attorneys for Defendants
FL3XX GMBH and ONLINE DELIVERY TECHNOLOGIES INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| STELLAR LABS, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>FL3XX GMBH, et al.,<br><br>Defendants. | Case No.  3:21-cv-05879-EMC<br><br>**FL3XX GMBH'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE**<br><br>Date:  Thursday, October 7, 2021<br>Time: 1:30 p.m.<br>Place: Videoconference Only (Zoom) |

**INTRODUCTION**

Stellar Labs, Inc.'s ("Stellar") motion for a temporary restraining order and order to show cause ("TRO") should be denied for the following reasons, among others:

1)  The court lacks subject matter jurisdiction to adjudicate this dispute because the sole asserted basis for jurisdiction (diversity) does not exist;

2)  Stellar cannot reasonably claim that an imminent threat of irreparable harm justifies issuance of a TRO when it has already slept on its rights for nearly four months, with the knowledge that FL3XX GmbH ("FL3XX") has been actively engaged in the marketing, sale, and support of its software in the U.S. market;

3)   Stellar's requested relief would neither preserve the status quo nor restore the status quo that preceded FL3XX's termination of its Reciprocal Reseller Agreement ("RRA") with Stellar in early June; and

4)   The requested relief serves no legitimate equitable or business purpose. It would not lessen the harm Stellar claims it will suffer in the absence of a TRO. However, such relief *would* harm FL3XX, damage the reputation of FL3XX's software, disrupt its customer relations, and potentially harm its customers' aviation operations.

**STATEMENT OF ISSUES**

First, as a threshold matter, whether the Court has subject matter jurisdiction to adjudicate this dispute. Second, whether Stellar's TRO application satisfies the general requirements for issuance of same, including whether Stellar has demonstrated that a TRO is necessary to prevent an imminent threat of irreparable harm. Third, whether Stellar's application is vulnerable to the defense of laches by virtue of its delay in seeking a TRO. Fourth, whether Stellar's proposed TRO would alter the status quo or otherwise be an inappropriate remedy under the circumstances. Fifth and finally, whether the Court should require Stellar to post a bond, should its TRO application be successful.

**STATEMENT OF FACTS**

This case arises from a business dispute between Stellar on the one hand and FL3XX and Online Delivery Technologies Inc. ("ODT") on the other. In 2020, FL3XX licensed Stellar as the exclusive reseller of its proprietary aviation operations software in the Americas and the Caribbean. The terms were embodied in two documents: a Master Strategic Alliance Agreement and the RRA (collectively the "Agreements"). [See Declaration of Paolo Sommariva ("Sommariva Decl."), filed herewith, at ¶¶ 5-6 and Exhs. 1 and 2.] FL3XX terminated the RRA in June 2021 after concluding that Stellar was not performing its contractual obligations under the RRA. [See *id.* at ¶ 15.] It contracted ODT to help it serve the United States market and has undertaken direct marketing, sales and customer support activities with respect to the U.S. market

since June 9, 2021.  [See *id.* at ¶¶ 3, 17.]  Stellar filed suit against FL3XX and ODT in July 2020. [See Decl. of Vicki Nakata ("Nakata Decl."), Document #18, Exh. 1 (Complaint).]  It seeks a combination of monetary damages and injunctive relief.

FL3XX is an Austrian LLC with its principal place of business in Vienna, Austria.  [See Sommariva Decl. at ¶ 2.]  It develops, markets, and sells software that assists business aviation companies in managing their operations.  [See *id.*]

Stellar is a Delaware corporation with its principal place of business in Burlingame, California.  [See Nakata Decl. Exh. 1 (Complaint) at ¶ 1.]  It provides a suite of advanced applications for business aviation to customers in the United States and other markets.  [See *id.* at ¶ 12.]

ODT is a Delaware corporation with its principal place of business in Greenville, South Carolina.  [See Declaration of Phillip Coulombe ("Coulombe Decl."), filed herewith, at ¶ 2.] ODT was a Delaware corporation in good standing as of the filing of the within action on July 30, 2021.  [See Coulombe Decl. at ¶ 6.]

Stellar is a much larger company than FL3XX.  According to Crunchbase.com, a business information platform, Stellar has raised a total of $38.5 million. Stellar's latest funding was on October 5, 2017, from a $26.3 million Series A investment.  In contrast, FL3XX is a small software start-up company that is largely founder-financed.  [See Sommariva Decl. at ¶ 7.]

FL3XX entered the U.S. business aviation market before entering into any agreements with Stellar.  Indeed, FL3XX's U.S. sales before commencement of the FL3XX-Stellar relationship exceeded those subsequently originated by Stellar.  [See *id.* at ¶ 4 .]

FL3XX resumed all marketing, sales, and customer support efforts in connection with U.S. customers and potential customers after it terminated the RRA, and has had no authorized reseller in the Americas or the Caribbean region since June 9, 2021.  [See *id.* at ¶ 17.]

ODT provides server and data hosting services to FL3XX for access and use by FL3XX's U.S. customers.  [See Coulombe Decl. at ¶¶ 3, 12; see also Sommariva Decl. at ¶ 3.]  ODT is not authorized to market or sell FL3XX software.  [See Coulombe Decl. at ¶ 13.]  It did recently

participate in some discussions with Journey Aviation, LLC ("Journey") to evaluate whether ODT might resell FL3XX's software to Journey and provide the same sort of support that Stellar had previously provided to Journey. However, ODT eventually abandoned the possibility of reselling FL3XX's software and providing support to Journey. [See *id.* at ¶¶ 10, 11.]

Since FL3XX terminated the RRA, Stellar personnel have referred sales leads to FL3XX on several occasions. [See Sommariva Decl. at ¶ 18.]

The U.S. market accounts for approximately 64% of the worldwide business aviation market. [See *id.* at ¶ 12.]

The National Business Aviation Association's Business Aviation Convention and Exhibition ("NBAA-BACE") in Las Vegas, Nevada, is the world's largest business aviation trade show, with thousands of participants and hundreds of exhibitors who are the major players in the global business aviation market. Many European and Middle East business aviation companies attend the NBAA-BACE. [See *id.* at ¶ 13.]

As of October 4, 2021, Stellar's website (https://www.stellar.aero/fl3xx/) continues to promote its relationship with FL3XX and to offer demonstrations of FL3XX's software, notwithstanding FL3XX's request that Stellar cease doing so. [See *id.* at ¶ 23.)

**ARGUMENT**

**I.     The Court Should Deny Stellar's Request for a TRO.**

Stellar asks the Court to issue a TRO restraining and enjoining FL3XX from marketing, selling, or advertising FL3XX's software in the United States, including at the upcoming NBAA-BACE event in Las Vegas.

Stellar's request is supported by a 23-page memorandum of points and authorities, several declarations, and over thirty exhibits. It clearly invested significant time and effort in preparing these documents. On the other hand, the exigent nature of Stellar's *ex parte* application for a TRO has deprived FL3XX and ODT of adequate time to brief all Stellar's arguments. Defendants believe the arguments presented in this necessarily curtailed opposition convincingly demonstrate why the Court should decline Stellar's request. To be clear, FL3XX and ODT

contest all of the arguments Stellar advances. Should this matter proceed to a preliminary injunction hearing, Defendants reserve the right and request the opportunity to present a full briefing opposing Stellar's motion.

### A. The Court Lacks Diversity Jurisdiction

Stellar's complaint alleges that the Court's subject matter jurisdiction over the within controversy is based upon the diversity of the parties and its claim that the damages exceed $75,000. [See Nakata Decl. at Exh. 1 (Complaint) ¶ 4.] Diversity of citizenship requires that parties to the action be "citizens" of different states. 28 U.S.C. § 1332(d). Specifically, all plaintiffs must be of different citizenship than all defendants. Any instance of common citizenship prevents federal diversity jurisdiction. *Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267 (1806) (overruled in part on other grounds in *Louisville, Cincinnati, & Charleston R.R. Co. v. Letson*, 43 US 497 (1844).

A corporation is deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business …." 28 U.S.C. § 1332(c)(1). A corporation incorporated in one state, and having its principal place of business in another, is a citizen of both states. It can sue or be sued in diversity actions only if no opposing party is a citizen of either state. *Bank of Calif. Nat'l Ass'n v. Twin Harbors Lumber Co.,* 465 F.2d 489, 491-492 (9th Cir. 1972). Diversity must exist at the time the lawsuit is filed. See *Grupo Dataflux v. Atlas Global Group, L.P.,* 541 US 567, 571 (2004).

Diversity jurisdiction is lacking in this case because both Stellar and ODT were Delaware corporations at the time Stellar filed its lawsuit. [See Nakata Decl. Exh. 1 (Complaint) at ¶ 1; Coulombe Decl. at ¶¶ 4, 6 and Exh. A; see also Defendants' Request for Judicial Notice, filed herewith, Exh. 1.) Consequently, the Court lacks subject matter jurisdiction over this action, and therefore also lacks authority to grant a TRO.

### B. Stellar Has Unduly Delayed Seeking Relief

FL3XX delivered its termination notice to Stellar in early June. [See Nakata Decl. Exh. 1 (Complaint) at ¶ 27.] Stellar's Complaint alleges a laundry list of actions FL3XX took in June

and July to prevent Stellar from operating as FL3XX's reseller. [See *id.* (Complaint) at ¶¶ 28, 33-38, and 45; see also Nakata Decl. at ¶¶ 3, 17.) According to Stellar's CEO, FL3XX's CEO told her on June 15 that FL3XX had the right to terminate the RRA and that further negotiations or mediation were unwarranted. [See Nakata Decl. at ¶ 16.] At the time, Stellar claims it was in contact with over one hundred (100) prospective customers to contract for FL3XX's software. [See *id.* at ¶ 12.] Stellar states that it sent FL3XX a cease-and-desist letter on July 8, 2021, demanding that FL3XX reactivate or reestablish all support channels and that FL3XX not interfere with Stellar's exclusive reselling rights. [See Nakata Decl. ¶ 3 and Exh. 1 (Complaint) at ¶ 39.] Stellar alleges it sent FL3XX another cease-and-desist letter on July 16, 2021, calling on FL3XX and ODT to stop marketing and selling the FL3XX software in violation of Stellar's exclusive rights. [See *id.* at ¶¶ 3, 20 and Exh. 1 (Complaint) at ¶ 43.] Stellar claims it demanded mediation on July 12, 2021, which FL3XX refused. [See *id.* at ¶ 3 and Exh. 1 (Complaint at ¶ 41.] It contends FL3XX's actions cost it two customers in July. [See *id.* at ¶ 3 and Exh. 1 (Complaint) at ¶¶ 42, 46.]

On July 13, 2021, FL3XX registered to operate its own booth at the NBAA-BACE trade show, and that information was subsequently published on the publicly viewable BACE website. [See Sommariva Decl. at ¶¶ 19, 20.]

Stellar filed suit against FL3XX and ODT on July 30, 2021, alleging seven causes of action. [See Nakata Decl. Exh. 1 (Complaint).] It claims Defendants' conduct caused it to lose more than $850,000 in revenue, as well as actual and prospective customers, and to sustain damage to its reputation. [See Nakata Decl. at ¶¶ 3, 27, 28, and Exh. 1 (Complaint) at ¶ 47.]

In sum, Stellar has been aware of FL3XX'S termination of the RRA and resumption of FL3XX's direct U.S. sales and marketing efforts for nearly *four months*, yet chose to wait until less than two weeks before the NBAA-BACE trade show to seek injunctive relief.

"[A] party requesting a preliminary injunction must generally show reasonable diligence." *Benisek v. Lamone,* 138 S.Ct. 1942, 1944 (2018) (upholding denial of preliminary injunction to plaintiffs whose redistricting challenge was brought "six years, and three general elections" after

new district map was adopted). Unexplained delay in seeking preliminary injunctive relief may undercut claims that plaintiff is threatened with "irreparable injury." *Garcia v. Google, Inc.,* 786 F3d 733, 746 (9th Cir. 2015); *Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc.,* 762 F2d 1374, 1377 (9th Cir. 1985); see also E.D. CA Rule 231(b) (TRO may be denied on ground of laches if applicant could have sought relief by earlier motion for preliminary injunction).

Stellar characterizes Defendants' actions since June as an existential threat to its business. Had Stellar acted diligently it could have obtained a hearing on a regularly noticed motion for preliminary injunction considerably sooner than the October 7 hearing on its TRO. Instead, it slept on its rights. Stellar's delay in seeking relief arose solely from circumstances within its control. The Court may reasonably infer—from Stellar's unwarranted and unexplained delay—that the conduct targeted by the TRO is not nearly as urgent a crisis as Stellar claims. Accordingly, the Court should not reward Stellar's own dilatory behavior. Rather, the Court should either deny the requested injunctive relief outright or wait to evaluate the merits of Stellar's request based on a fair opportunity for the parties to argue the matter at a fully briefed preliminary injunction hearing.

### C.     A TRO Would Not Preserve the Status Quo

Stellar variously contends that its TRO application seeks to maintain the status quo or the status quo ante. [See Memorandum of Points and Authorities ("MPA"), Document #15, at 4:9-11, 6:19-20, 18:11, 20:12, and 23:7-9.] It further claims it seeks to maintain the status quo to continue supporting its existing customer contracts. [See *id.* at 18:14-15, 23:3-4, and 24:2-3.]

The sole purpose of a TRO is to preserve the status quo and prevent irreparable harm pending hearing on the moving party's application for a preliminary injunction. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70,* 415 U.S. 423, 439 (1974); *City & County of San Francisco v. United States Citizenship & Immigration Servs.*, 944 F3d 773, 789 (9th Cir. 2019). "Status quo" means the last uncontested status that preceded the pending controversy. *Department of Parks & Recreation v. Bazaar Del Mundo Inc.,* 448 F3d 1118, 1124 (9th Cir. 2006). Injunctive relief is not automatically denied because it would alter the status quo,

but requests for such relief are subject to higher scrutiny and carry a heavy burden of persuasion. *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.,* 60 F3d 27, 32-33 (2d Cir. 1995).

As discussed below, enjoining FL3XX from marketing and selling its software in the United States will neither preserve the status quo nor restore it to the status quo that existed prior to the pending controversy.

### 1. A TRO would not preserve the present status quo.

FL3XX has worked to market and sell its software in the U.S. since it terminated the RRA in June. Stellar has not been an authorized reseller for FL3XX since that time. Stellar's requested relief would not preserve the current status quo because it would deprive FL3XX from marketing and selling directly in the U.S. marketplace. This was FL3XX's business model before it entered into the RRA with Stellar, and it resumed that practice following the termination date.

### 2. A TRO would not restore the status quo ante.

Stellar's requested relief would not restore the parties' positions to the last uncontested status that preceded the pending controversy (i.e., early June 2021) because it does not provide for Stellar to regain any of the contractual rights it lost four months ago, including the rights to market, advertise and sell FL3XX's software in the Americas and the Caribbean. Contrary to Stellar's assertion in its moving papers, a TRO would not *restore* its contractual right and obligation under the Agreements to service existing U.S. customer contracts. Stellar would not regain the right to provide platform setup, software support, or any other form of customer service to U.S. FL3XX's software users.

### 3. A TRO would substantially alter the status quo.

If granted, a TRO would actually achieve a result *contrary* to the status quo concept: *neither FL3XX nor Stellar* would be authorized to market or sell the subject software in the U.S. market. Existing customers would be unable to renew their contracts. Such "relief" would undoubtedly have a chilling effect on the provision of support to existing customers because of the fear that such activities might be depicted as "marketing." Stellar's request would

substantially alter the status quo and cannot survive the stricter scrutiny that the Court must apply in considering it. *Tom Doherty,* 60 F3d at 32-33.

### D. A TRO Would Not Help Stellar, But Would Significantly Harm FL3XX and Its Customers

Stellar lost its reseller rights in June, and a TRO would not restore them. Conversely, a TRO would have a significant adverse impact on FL3XX, with ripple effects through the ecosystem of its software. The U.S. represents about 64% of the global business aviation market, [See Sommariva Decl. at ¶ 12 .] The NBAA-BACE is the world's largest business aviation trade show, with thousands of participants and hundreds of exhibitors who are the major players in the global business aviation market. Many European and Middle East business aviation companies attend the NBAA-BACE. [See *id.* at ¶ 13.] The NBAA-BACE is the most important venue for FL3XX to connect with its current and prospective customers, integration partners, and others in the business aviation industry. FL3XX is investing tens of thousands of dollars to attend the NBAA-BACE, in order to give the global business aviation industry access to experience FL3XX's software. The 2021 NBAA-BACE will be the single largest marketing initiative in FL3XX's history. [See *id.* at ¶ 21.]

If prevented from participating in the NBAA-BACE, FL3XX will incur detrimental brand and relationship damages in the short and long term, both in the United States and globally, including in its home markets of Europe and the Middle East. [See *id.* at ¶22.] Locking FL3XX out of the event will cause FL3XX immediate damage in the form of unrecoverable event-related expenses and inflict far more significant lost opportunity damages. Moreover, the complete absence of any domestic marketing and sales activity in the world's largest market for business aviation-related services could only cause FL3XX's software to lose traction and risk undermining FL3XX's reputation.

To the extent Stellar ultimately wants to obtain restoration of its U.S. reseller's rights, it doesn't make business sense for Stellar to intentionally hurt the prospects of FL3XX's software. Rather, Stellar should reconcile itself to the status quo that has existed since June and hope that FL3XX successfully promotes its software during the pendency of the present controversy.

### II. Should It Grant a TRO, the Court Should Require Stellar to Post a Bond.

No party may obtain a TRO or preliminary injunction without first posting security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Although the amount of the bond is discretionary and a court may waive it, "the district court must expressly address the issue of security before allowing any waiver and cannot 'disregard the bond requirement altogether.'" *Pashby v. Delia,* 709 F3d 307, 332 (4th Cir. 2013).

Should the Court decide to issue a TRO, which outcome Defendants vigorously oppose, it should nevertheless require Stellar to post a bond in an amount reflective of the significant actual and prospective economic damages facing FL3XX and ODT.

### CONCLUSION

FL3XX and ODT respectfully request that the Court deny Stellar's TRO application and schedule further proceedings as appropriate further to dismissing the case for lack of subject matter jurisdiction. Should Stellar cure the diversity jurisdiction issue prior to the hearing, by dismissing its claims against ODT, FL3XX would respectfully ask the Court to deny the TRO and set the preliminary injunction briefing and hearing schedule such that the briefing deadlines occur sufficiently after November 4, 2021, so that FL3XX is permitted an adequate opportunity to prepare its opposition briefing after filing its response to Stellar's Complaint.

Dated:  October 4, 2021                          NIESAR & VESTAL LLP

                                                 By:   */s/ John A. Kelley*
                                                       John A. Kelley
                                                       Attorneys for Defendants